**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ngoc M. Tran, | No. CV-24-00128-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ngoc Tran seeks judicial review of the final decision of the Commissioner of Social Security which denied her claim for disability insurance benefits.  For reasons stated below, the Court will affirm the decision.

**I.    Background.**

Plaintiff is 54 years old, has a high school diploma, and previously worked as a manicurist in Georgia.  Administrative Transcript ("Tr.") 47-50, 170, 1335, 1362-64.  Plaintiff sustained injuries to her neck, back, and left extremities in a December 2018 auto accident.  Tr. 297, 302.  Plaintiff continued to work at the nail salon after the accident, but stopped working when she moved to Arizona in May 2019.  Tr. 50.

Plaintiff applied for disability insurance benefits in July 2019 and alleges an amended disability date of May 10, 2019.  Tr. 47, 66, 170-76, 1324.  The claim was denied by state agency physicians at the initial and reconsideration levels.  Tr. 64-91.  A hearing

1

1   before an Administrative Law Judge ("ALJ") was held in November 2020.  Tr. 38-63.  The

2   ALJ denied the claim in February 2021 and the Appeals Council denied review.  Tr. 1-9,

3   14-31.  Plaintiff sought judicial review in September 2021.  Tr. 1430-31.  Pursuant to the

4   parties' stipulation, Judge John Tuchi reversed the ALJ's decision and remanded the case

5   in March 2022.  Tr. 1437-40; *see Tran v. Comm'r of Soc. Sec.*, No. CV-21-01618-PXH-

6   JJT (D. Ariz. Mar. 9, 2022) (Doc. 16).

7       The ALJ held a new hearing on May 24, 2023, at which Plaintiff, her son-in-law,

8   and a vocational expert testified.  Tr. 1353-1401.  The ALJ issued another unfavorable

9   decision on August 1, 2023.  Tr. 1320-43.  This decision became the Commissioner's final

10  decision when the Appeals Council denied review.  Tr. 1308-14.

11      Plaintiff brings this action for judicial review under 42 U.S.C. § 405(g).  Doc. 1.

12  The parties have briefed the issues.  Docs. 13, 17-18.

13  **II.   Standard of Review.**

14      The Court must affirm the ALJ's decision if it is free of legal error and supported

15  by substantial evidence.  42 U.S.C. § 405(g); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

16  Cir. 1989).  Substantial evidence is more than a scintilla, less than a preponderance, and

17  relevant evidence that a reasonable person might accept as adequate to support a

18  conclusion.  *Id.*  In determining whether substantial evidence supports the ALJ's decision,

19  the Court must consider the record as a whole and "may not affirm simply by isolating a

20  'specific quantum of supporting evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

21  2007) (citations omitted).

22      The ALJ is responsible for determining credibility and resolving ambiguities and

23  conflicts in the evidence.  *Magallanes*, 881 F.2d at 750.  Where "the evidence is susceptible

24  to more than one rational interpretation, one of which supports the ALJ's decision, the

25  ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

26      In reviewing the ALJ's decision, the Court considers "only issues which are argued

27  specifically and distinctly in a party's opening brief."  *Indep. Towers of Washington v.*

28  *Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see Lewis v. Apfel*, 236 F.3d 503, 517 n.13

2

(9th Cir. 2001).  A general assertion that the ALJ committed legal error, or that the ALJ's decision is not supported by substantial evidence, is not sufficient to raise the issue for review.  *See id.*; LRCiv 16.1(a).

**III.     Disability and the Five-Step Evaluation Process.**

Under the Social Security Act, a claimant is disabled if she cannot engage in substantial gainful activity ("SGA") because of a medically determinable physical or mental impairment that has lasted, or can be expected to last, for twelve months or more. 42 U.S.C. § 423(d)(1)(A).  Whether the claimant is disabled is determined by a five-step process.  The claimant must show that (1) she has not engaged in SGA since the alleged disability date, (2) she has a severe impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") – the most she can do with her impairment – precludes her from performing past work.  If the claimant meets her burden at step three, she is presumed disabled and the process ends.  If the inquiry proceeds and the claimant meets her burden at step four, then (5) the Commissioner must show that the claimant is able to perform other available work given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1509, 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996) (RFC assessment); *Woods v. Kijakazi*, 32 F.4th 785, 788 n.1 (9th Cir. 2022) (describing the five-step process).

The ALJ found that Plaintiff met her burden at steps one and two because she has not engaged in SGA since the alleged disability date and has severe hypertension, diabetes mellitus, obesity, cervical stenosis, degenerative disc disease, status post small ischemic stroke, foot impairment, chronic pain syndrome, and left knee degenerative joint disease.  Tr. 1326-27.[1]

The ALJ found at step three that Plaintiff's impairments do not meet or medically equal the severity of a listed impairment. Tr. 1327.  Plaintiff does not challenge this finding.

___

[1] An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities, including physical functions such as sitting, standing, walking, lifting, carrying, reaching, and handling.  20 C.F.R. § 404.1522(c).

At step four, the ALJ determined that Plaintiff has the RFC to perform a full range of sedentary work, including her past work as a manicurist.  Tr. 1327-36.  The ALJ therefore found Plaintiff not disabled within the meaning of the Social Security Act.  Tr. 1336.[2]

**IV.    Discussion.**

Plaintiff contends that the ALJ erred by rejecting the opinion of Dr. Evan Franke and discounting Plaintiff's symptom testimony.  Docs. 13, 18.  Defendant argues that the ALJ committed no harmful legal error and her decision is supported by substantial evidence.  Doc. 17.

**A.    Dr. Franke's Opinion.**

**1.    Evaluation of Medical Opinions.**

The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments[.]"  20 C.F.R. § 404.1527(a)(1).  "When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at 'face value.'  Rather, the ALJ must scrutinize the various – often conflicting – medical opinions to determine how much weight to afford each opinion."  *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. 2024) (quoting *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)).

For claims filed before March 27, 2017, the regulations require an ALJ "to assess medical opinions 'based on the extent of the doctor's relationship with the claimant.'"  *Id.* at 1214 (quoting *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022)); *see* 20 C.F.R. § 404.1520.  "To reject either a treating or an examining physician's opinion, an ALJ must provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence,

---

[2] To determine the physical requirements of work in the national economy, the Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy.  Sedentary work involves sitting with occasional standing or walking (up to two hours), lifting no more than 10 pounds, and occasionally lifting or carrying items like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a).

1   or 'specific and legitimate reasons' otherwise[.]"  *Woods*, 32 F.4th at 789 (citations

2   omitted).

3         Plaintiff filed her claim after March 27, 2017, and the revised regulations regarding

4   the evaluation of medical opinions therefore apply.  *See* Revisions to Rules Regarding the

5   Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R.

6   § 404.1520c.  "The revised regulations provide that ALJs will no longer 'defer or give any

7   specific evidentiary weight' to any medical opinions."  *Cross*, 89 F.4th at 1214 (citation

8   omitted).  Indeed, this Circuit made clear in *Woods* that the revised regulations "are clearly

9   irreconcilable" with its longstanding treating source rule, which categorized medical

10  opinions in a three-tiered hierarchy that "accord[ed] special deference to the opinions of

11  treating and examining physicians on account of their relationship with the claimant" and

12  less weight to the opinions of physicians who only review the record.  32 F.4th at 792.

13        Under the revised regulations, there is no "inherent persuasiveness" to opinions

14  from either a claimant's own medical sources or government consultants.  *Id.* at 791.  The

15  most important factors are "supportability" and "consistency."  *Id.*  "Supportability" is "the

16  extent to which a medical source supports the medical opinion by explaining the 'relevant

17  objective medical evidence.'"  *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)).

18  "Consistency" is "the extent to which a medical opinion is 'consistent with the evidence

19  from other medical sources and nonmedical sources[.]'"  *Id.* at 792 (quoting 20 C.F.R.

20  § 404.1520c(c)(2)).[3]

21        The ALJ "must articulate how persuasive she finds all of the medical opinions . . .

22  and explain how she considered the supportability and consistency factors in reaching these

23  findings."  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)) (cleaned up).  Because

24  many claims have voluminous case records, however, "it is not administratively feasible

25  for [the ALJ] to articulate in each determination or decision how [she] considered all of the

26

27
_____

28      [3] An ALJ may discuss other factors such as the medical source's specialization or relationship with the claimant, but has no obligation to do so.  *See id.*; *Cross*, 89 F.4th at 1214; 20 C.F.R. § 404.1520c(b)(2), (c)(3)-(4).

factors for all of the medical opinions and prior administrative medical findings in [the] case record."  20 C.F.R. § 404.1520c(b)(1); *see Jamie Allen W. v. O'Malley*, No. 4:23-CV-00202-REP, 2024 WL 1465924, at *7 (D. Idaho Apr. 4, 2024) ("An ALJ need not articulate how he considers each aspect of a doctor's medical opinions on a line-by-line or opinion-by-opinion basis."); *Munson v. Comm'r of Soc. Sec. Admin.*, No. CV-23-01253-PHX-DWL, 2024 WL 2953534, at *9 (D. Ariz. June 12, 2024) ("The ALJ was only required to provide reasons for why Dr. McGady's opinions were, on the whole, persuasive or unpersuasive and was not required to individually analyze all of Dr. McGady's discrete sub-opinions.").

### 2.    The ALJ's Evaluation of Dr. Franke's Opinion.[4]

Dr. Franke is a pain management specialist who treated Plaintiff between November 2019 and September 2020.  *See* Tr. 526-44, 759-78 (Exs. 11F and 16F).  Dr. Franke completed a medical source statement regarding Plaintiff's impairments and functional limitations in August 2020.  Tr. 798-801 (Ex. 18F).  He diagnosed Plaintiff with chronic lumbar spondylosis and radiculopathy causing low back and leg pain.  Tr. 798.  He noted that treatment included physical therapy and epidural steroid injections, but did not address the response to such treatment.  *Id.*  He opined that Plaintiff frequently experienced pain and other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks.  Tr. 799.

Regarding functional limitations, Dr. Franke opined that during an eight-hour workday Plaintiff could sit and stand 30 minutes at a time with up to four hours of sitting and the need to change positions every 30 minutes; occasionally lift and carry less than ten pounds; rarely twist, stoop, and crouch; frequently look down and turn her head; and use her arms, hands, and fingers to reach and handle things without significant limitations.

---

[4] In July 2020, Plaintiff's primary care physician, Dr. Jocelyn Nguyen, opined that Plaintiff had extreme limitations that precluded her from performing simple tasks and sitting and walking for more than a few minutes at a time.  Tr. 545-48 (Ex. 12F).  The ALJ rejected Dr. Nguyen's opinion as unsupported and inconsistent with the evidence of record.  Tr. 1333.  Plaintiff does not challenge this finding.  *See* Doc. 13 at 6 n.3.

1   Tr. 799-801.  Dr. Franke also opined that Plaintiff would need unscheduled breaks every
2   one to two hours and would be absent from work about three days per month.  Tr. 800-01.
3   The clinical findings identified to support the opinion were limited range of motion with
4   positive facet maneuvers and straight leg raises.  Tr. 798.
5           Consistent with the Appeals Council's remand instructions (Tr. 1146), the ALJ
6   considered both the "supportability" and "consistency" of Dr. Franke's opinion.  *See* 20
7   C.F.R. § 404.1520c(a), (c)(1)(2).  The ALJ provided the following explanation for finding
8   the opinion to be "generally not persuasive":

> Although this opinion is better supported and more consistent than the
> opinion of Dr. Nguyen, it is also more limiting than can be supported by the
> objective record.  Dr. Franke supported [his opinion] with citation to the
> claimant's limited range of motion, positive fac[e]t provocation maneuvers,
> and positive straight leg raise testing on examination (Ex. 18F).  Although
> these findings are present in Dr. Franke's treatment notes, the undersigned
> notes that the claimant also continued to display normal gait and strength
> during these visits and reported significant pain relief with injections (Ex.
> 11F/1, 8, 11, 16F/1, 4, 6, 12, 15).  Furthermore, records from the period in
> question before and after Dr. Franke's treatment of the claimant are not
> consistent with his opinion, with negative straight leg raise testing and
> normal range of motion (Ex. 4F, 26F).

17  Tr. 1334.
18          Plaintiff contends that the ALJ erred in finding that Dr. Franke's opinion was not
19  supported by his clinical findings and was not consistent with evidence from other medical
20  sources.  Doc. 13 at 12-14.  Defendant notes, correctly, that an ALJ may properly reject a
21  medical opinion as either unsupported or inconsistent.  Doc. 17 at 3; *see Woods*, 32 F.4th
22  at 792-93; *Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31,
23  2023) ("As required, the ALJ considered both the 'supportability' and 'consistency' of Dr.
24  Gritzka's opinion, finding it unpersuasive because while the opinion was supported by
25  examination notes, it was 'not consistent with the longitudinal evidence of record.'")
26  (citations omitted); *Tracy F. v. O'Malley*, No. 1:22-cv-00233-DCN-DKG, 2024 WL
27  1701572, at *4 (D. Idaho Apr. 19, 2024) ("Although the medical opinions at issue in *Woods*

7

1    and *Allen* were both supported, the Ninth Circuit held the ALJ appropriately rejected such

2    opinions as unpersuasive because such opinions were inconsistent with the record."); 

3    *Thompson v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08076-PHX-SPL, 2022 WL

4    3098039, at *6 (D. Ariz. Aug. 4, 2022) (finding no harmful error with respect to

5    supportability where the ALJ properly considered consistency).  The Court concludes that

6    the ALJ erred in her consideration of supportability, but properly discounted Dr. Franke's

7    opinion based on consistency.

8                    a.    **Supportability.**

9            The ALJ clearly erred in failing to articulate how Plaintiff's normal gait and strength

10   rendered Dr. Franke's opinion unsupported when he did not state that Plaintiff had

11   abnormal gait or strength and instead relied on her limited range of motion and positive

12   facet maneuvers and straight leg raises – findings that the ALJ herself acknowledged were

13   present in Dr. Franke's treatment notes.  *See* Tr. 1334; Doc. 13 at 12-13 (citations omitted).

14          The ALJ also erred in finding Dr. Franke's opinion to be unsupported because

15   Plaintiff had "significant pain relief with injections."  Tr. 1334.  When citing to these

16   instances of relief, "the ALJ failed to take into account that [P]laintiff experienced only

17   temporary pain relief, and the injections did not restore her functional abilities."  *Juanita*

18   *K. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-CV-00461-HL, 2023 WL 2929493, at *7 (D. Or.

19   Apr. 13, 2023); *see* Tr. 764, 770 (noting that "the symptoms have returned" and Plaintiff

20   "continues to have low back pain" with "[a]verage pain scores [of] 7/10"); Tr. 1371 (stating

21   she had "a little bit" of improvement from the injections).  "The fact that [Plaintiff]

22   experienced a brief period of reprieve following treatment does not support a finding that

23   her pain was controlled.  Rather, the ALJ [was required to] show that the treatment was

24   capable of providing lasting relief."  *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz.

25   2016); *see Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (finding that the ALJ

26   erred where the epidural shots "relieved [the claimant's] back pain for only variable, brief

27   periods of time, ranging from a couple of months to a few days"); *Attmore v. Colvin*, 827

28   F.3d 872, 877-79 (9th Cir. 2016) (finding that "the ALJ erroneously focused on only

                                                      8

temporary periods and isolated aspects of [the claimant's] improvement that were not representative of the continuing severity of her symptoms").

**b.    Consistency.**

As noted, Dr. Franke's opinion was based on his clinical findings of limited range of motion and positive straight leg raises.  Tr. 798.  The ALJ found Dr. Franke's opinion to be inconsistent with other medical records – from both before and after his treatment of Plaintiff – showing normal range of motion and negative straight leg raises.  Tr. 1334 (citing Exs. 4F and 26F).  The ALJ did not err in this regard.[5]

Plaintiff received treatment from Dr. Christopher Taylor between January and March 2019.  Tr. 388-405 (Ex. 4F).  A treatment note dated January 7 shows that Plaintiff's left lower extremity had normal range of motion, stability, and tone with 5/5 strength.  Tr. 394.  The next treatment note dated January 28 shows normal range of motion and stability in the left lower extremity with negative straight leg raises.  Tr. 391.[6]

In December 2022, Plaintiff was examined by Douglas Denney, P.A.-C., a certified physician assistant.  Tr. 1676-86 (Ex. 26F).[7]  The examination showed negative straight leg raises and normal range of motion in the neck, back, and lower extremities.  Tr. 1679. The ALJ correctly determined that these clinical findings are not consistent with Dr.

---

[5] Plaintiff's medical records from before the alleged disability date of May 10, 2019 (as amended) are relevant to Plaintiff's RFC and whether she is disabled, particularly given that her alleged symptoms arise from injuries sustained in December 2018.  *See* Doc. 13 at 14; SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *Willie W. v. Comm'r of Soc. Sec.*, No. 4:21-cv-00495-BLW-REP, 2023 WL 2563865, at *7 (D. Idaho Mar. 2, 2023) ("[M]edical opinions are not *per se* irrelevant merely because they predate the disability onset date."); *Franklin T. v. Saul*, No. 3:19-CV-00967-SB, 2020 WL 4339903, at *9 (D. Or. July 27, 2020) (noting that the Ninth Circuit has held that "the ALJ should consider all medical evidence, even if it predates the claimant's alleged onset date") (citing *Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012)).  Any error in this regard is harmless because the ALJ also relied on medical records from after the alleged disability date.

[6] Although these notes also indicate decreased range of motion in the back and neck, Plaintiff reported on March 4 that her "back and neck seem to be better" and her "current pain level is 2/10."  Tr. 390.  That treatment note also indicates that the left lower extremity had no "numbness, weakness, catching or giving out[,]" and an MRI of the left knee was normal with only minimal degenerative changes and an old MCL sprain.  *Id.*

[7] Under the applicable regulations, physician assistants are "acceptable medical sources."  *Woods*, 32 F.4th at 789, n.2 (citing 20 C.F.R. § 404.1502(a)(8)).

Franke's opinion, and the determination easily "clear[s] the low substantial evidence bar." *Ford*, 950 F.3d at 1159; *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (the "substantial evidence" threshold "is not high" and "defers to the presiding ALJ"); *Esparza v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00142-PHX-DJH, 2021 WL 527378, at *6 (D. Ariz. Feb. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold, the ALJ's conclusion is entitled to deference"); *Minnifield v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00913-PHX-MTL, 2021 WL 100105, at *3 (D. Ariz. Jan. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold and highly deferential, the ALJ's interpretation of the evidence was reasonable.") (citation omitted); *see also Thomas*, 278 F.3d at 957 (noting that even the opinions of non-examining sources may "serve as substantial evidence when the opinions are consistent with independent clinical findings").

Plaintiff asserts that the ALJ did not rely on Mr. Denney's examination report in discounting Dr. Franke's opinion. Doc. 13 at 14. This is not correct.

The ALJ specifically cited the report in evaluating Dr. Franke's opinion for consistency. Tr. 1334 (citing Ex. 26F). And while the ALJ did not find "fully persuasive" certain capabilities opined to by Mr. Denney, such as medium work with occasional stairs and ramps, the ALJ made clear that Denney's "opinion supports the conclusion that [Plaintiff] is not more limited than found in [the ALJ's] decision." Tr. 1335.[8]

Plaintiff contends that instead of simply accepting Dr. Franke's opinion, the ALJ impermissibly relied on her own lay impression of the medical evidence to determine an RFC. Doc. 13 at 15-16. But it is "the responsibility of the ALJ, not the claimant's physician, to determine [RFC]." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "That determination is made 'based on all of the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and in doing so the ALJ must 'evaluate the persuasiveness of

---

[8] Plaintiff asserts that she had significant difficulty communicating with Mr. Denney due to an improper interpreter (*see* Tr. 1617), but the ALJ correctly notes that this concern is not indicated in Mr. Denney's report (Tr. 1335).

1    medical opinions,' 20 C.F.R. § 404.1520c(a)[.]"  *Tansy v. Comm'r of Soc. Sec. Admin.*,

2    No. CV-21-1873-PHX-SMB (JFM), 2022 WL 16752321, at *9 (D. Ariz. Sept. 22, 2022).

3          That is what the ALJ did in concluding that Dr. Franke's opinion is not consistent

4    with clinical findings of Mr. Denney and Dr. Taylor.  *See Mills v. Comm'r of Soc. Sec.*,

5    No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (rejecting

6    the argument that the ALJ attempted to "play doctor" because "it is the ALJ's responsibility

7    to formulate an RFC that is based on the record as a whole," and the ALJ "carefully

8    analyzed the various medical opinions, treatment records, and plaintiff's own testimony in

9    formulating an RFC"); *Lopez v. Saul*, No. 1:19-CV-00971-BAM, 2020 WL 6526197, at *8

10   (E.D. Cal. Nov. 5, 2020) ("Plaintiff's additional argument that the ALJ 'played doctor' by

11   interpreting the medical evidence . . . is likewise without merit.  Contrary to Plaintiff's

12   contention, it is within the ALJ's province to synthesize the medical evidence.") (cleaned

13   up); *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level,

14   capable of independently reviewing and forming conclusions about medical evidence to

15   discharge their statutory duty to determine whether a claimant is disabled and cannot

16   work."); *see also* 20 C.F.R. §§ 404.1527(d)(2) ("the final responsibility for deciding [RFC]

17   is reserved to the Commissioner"); 404.1545(a)(1) ("We will assess your [RFC] capacity

18   based on all the relevant evidence in your case record.").

19         To the extent Plaintiff advocates for an alternative interpretation of the evidence in

20   the record (*see* Doc. 13 at 13), the Court will not second-guess the ALJ's reasonable

21   interpretation, even if such evidence could give rise to inferences more favorable to

22   Plaintiff.  While Plaintiff may disagree with the RFC, the Court must uphold the ALJ's

23   determination where, as here, it is a rational interpretation of the evidence.  *See Magallanes*,

24   881 F.2d at 750; *Adams v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01247-PHX-JAT, 2021

25   WL 2644272, at *4 (D. Ariz. June 28, 2021) ("[I]t is not for this Court to second guess the

26   ALJ's reasonable interpretation of the medical record because 'where evidence is

27   susceptible to more than one rational interpretation, as it is here, it is the ALJ's conclusion

28   that must be upheld.'") (citation omitted); *Jaime v. Kijakazi*, No. 1:21-CV-01672-SKO,

11

2023 WL 2466196, at *11 (E.D. Cal. Mar. 10, 2023) ("Plaintiff appears to be advocating for an alternative interpretation of the evidence . . . .   The Court will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff."); *Thompson*, 2022 WL 3098039, at *6 ("Although there is evidence in the record that may support Plaintiff's assertions, the ALJ has provided 'relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion.' Because there is substantial evidence, the ALJ has properly evaluated the consistency of P.A. Porter's opinion.") (citation omitted).

### B.      Plaintiff's Symptom Testimony.

A two-step analysis is required to evaluate symptom testimony.  First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms.  *See Garrison*, 759 F.3d at 1014.  The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably cause some degree of the symptoms.  *Id.*  Second, if there is no evidence of malingering, the ALJ must give clear and convincing reasons for rejecting the claimant's symptom testimony.  *Id.*

Plaintiff testified about her symptoms and daily activities at the administrative hearings. Tr. 47-62, 1362-74.  She stated that she is unable to work due to injuries sustained in the 2018 auto accident, and that while she returned to work for several months following the accident, the work was based on her prior relationship with the owner of the nail salon and was performed with accommodations.  She has chronic pain rated at 7/10 and is limited to sitting and walking one hour at a time and standing 30 minutes at a time.  She is unable to lift anything, but can do limited household chores with difficulty and drives once per week.  *Id.*

The ALJ followed the required two-step process for evaluating Plaintiff's testimony. She first found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms.  Tr. 1329.  The ALJ also found, however, that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record.  *Id.*  The ALJ proceeded to thoroughly discuss all medical evidence of record, from emergency care after the accident in December 2018 to Mr. Denney's examination in December 2022.  Tr. 1329-35.

The ALJ found Plaintiff's testimony not entirely credible based on improved symptoms with treatment and medical evidence showing less than disabling functional limitations:

> Physical therapy records indicate significant improvement in her symptoms (Ex. 3F).  In February 2019, she reported only pain at a level 1 out of 10, with some neck soreness, but no issues with her back or leg, and she reported working as a nail technician without pain (Ex. 3F/6).  It should be noted the information provided during her medical appointment is inconsistent with her testimony and there has been no explanation provided regarding this inconsistency.  At discharge, she was noted to have made improvements, to be feeling better, and to be independent with her home exercise program (Ex. 3F/2).  At a follow up with her physician in March 2019, the claimant reported only 2/10 pain, and stated that her primary problem was occasional pain in her left knee (Ex. 4F/3).  Imaging indicated minimal degenerative changes of the joint, and the claimant displayed a normal gait with no distress during the exam.
>
> This record indicates acute symptoms following the claimant's December 2018 automobile accident but does not support her allegations that these symptoms were so severe as to prevent her from continuing her work, as she improved quicky with treatment and stated to her treating medical providers that she was able to work without pain.  There has been no explanation provided why she did not report ongoing symptoms as she alleged at the hearing or that her employer provided accommodations.

Tr. 1330 (citing Tr. 363, 367, 390); *see also* Tr. 1333 ("The claimant continued to work to May 2019 . . . .  The claimant has asserted she worked as a custodian at the nail salon following her motor vehicle accident, which is inconsistent with what was reported to a treating medical provider.").

After moving to Arizona in May 2019 – the month Plaintiff claims to have become disabled based on the amended onset date – she did not seek treatment for her alleged

accident-related symptoms for several months.  The ALJ noted that Plaintiff established primary care with a new provider in July 2019 and the "examination was generally unremarkable, with normal motor and sensory exam and no acute distress noted." Tr. 1330 (citing Ex. 5F/1 (Tr. 406)).  In October 2019, Plaintiff reported having chronic pain relating to the accident, but without having sought any orthopedic treatment since moving to Arizona.  *Id.* (citing Ex. 7F/12 (Tr. 435)).  On exam, Plaintiff displayed normal range of motion of the spine and normal gait.  *Id.*  Plaintiff reported managing her pain by resting, but being able to clean, cook, and walk her dog.  *Id.*  The ALJ found Plaintiff's reports during this medical visit to be inconsistent with her testimony of disabling symptoms.  *Id.*

Because the ALJ found no evidence of malingering, she could discount Plaintiff's testimony only by making "specific findings stating clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  The ALJ's findings must be "sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony."  *Thomas*, 278 F.3d at 958.

The ALJ met this standard.  She carefully reviewed the medical evidence and found that Plaintiff's symptom testimony does not entirely comport with medical records, effective therapy, and normal clinical findings.  *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.  We have upheld ALJ decisions that do just that in many cases.") (citations omitted); SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").  Although reasonable minds could reach different conclusions from Plaintiff's medical history, the Court "may not engage in second-guessing" where "the ALJ's credibility finding is supported by substantial evidence in the record," as it is here.  *Thomas*, 278 F.3d at 959.

Plaintiff asserts that an ALJ may not reject symptom testimony based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.  Doc. 13 at 18.  "Plaintiff is correct, that absence of corroborating objective medical evidence is not a clear and convincing reason to discount subjective symptom testimony about pain; conflict with objective medical evidence is, however."  *Tamera H. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-1428-MO, 2024 WL 68354, at *3 (D. Or. Jan. 5, 2024) (citing *Smartt*, 53 F.4th at 498).  Here, the ALJ relied on inconsistencies between Plaintiff's testimony and the medical evidence – a valid reason to discount her testimony.  *See id.*

Plaintiff contends that the ALJ failed to specify the testimony she found not credible and merely summarized some of the medical evidence.  Doc. 13 at 17-18.  The Court disagrees.  The ALJ recounted Plaintiff's testimony at each hearing (Tr. 1328-29), discussed all medical evidence in detail (Tr. 1329-35), and specifically identified the medical records and daily activities she found inconsistent with Plaintiff's testimony of disabling symptoms (Tr. 1330-34 (citing, e.g., Exs. 3F/2, 6; 4F/3, 7F/12; 28F/30, 42)).

And contrary to Plaintiff's suggestion (Doc. 13 at 20), the ALJ did not ignore testimony that Plaintiff performed daily activities with difficulty and needed help from family members.  *See* Tr. 1328-29 (recounting testimony of Plaintiff and her son-in-law).  The ALJ reasonably found that objective medical evidence and certain of Plaintiff's activities showed that her symptoms were not as severe as alleged.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Nazarian v. Berryhill*, No. CV 17-1114 JC, 2018 WL 2938581, at *7 (C.D. Cal. June 7, 2018) ("[A]n ALJ [need not] find that a claimant's daily activities demonstrate an ability to engage in full-time work (i.e., eight hours a day, five days a week) in order to discount conflicting subjective symptom testimony.  To the contrary, even where a claimant's activities suggest some difficulty in functioning, an ALJ may give less weight to subjective complaints to the extent a claimant's apparent actual level of activity is inconsistent with the extent of

functional limitation the claimant has alleged.").   Although the evidence of Plaintiff's "daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and '[the Court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (citation omitted).

The ALJ concluded as follows regarding Plaintiff's RFC:

> Based on the foregoing, the undersigned finds the claimant has the above [RFC] assessment, which is supported by the objective medical evidence of record, which indicates good initial recovery following the claimant's 2018 motor vehicle accident, conservative treatment with pain management and physical therapy in 2019 and 2020, and continuing management of her diabetes with a primary care physician.  Objective findings during the course of treatment have shown normal upper and lower extremity strength, and there is no support for allegations of loss of upper extremity dexterity.  This record supports a finding that the claimant retains the capacity for sedentary work.

Tr. 1335.

Plaintiff cites *Garrison* for the proposition that epidural steroid injections are not conservative treatment.  Doc. 13 at 21.  But *Garrison* merely expressed "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."  759 F.3d at 1015, n.20.  Even assuming the ALJ erred in finding Plaintiff's injections to be conservative, the ALJ properly relied on objective medical evidence to discount Plaintiff's symptom testimony and determine her RFC.  *See Acevedo v. Berryhill*, No. ED CV 17-00775 AFM, 2018 WL 1155972, at *5 (C.D. Cal. Mar. 1, 2018) ("Even assuming the ALJ improperly characterized Plaintiff's treatment as conservative, any error was harmless in light of the other clear and convincing reasons provided in his decision."); *Regina L. v. Kijakazi*, No. 8:23-CV-00152-PD, 2023 WL 6926204, at *4 (C.D. Cal. Oct. 19, 2023) ("The ALJ also discounted Plaintiff's subjective complaints because . . . she generally received conservative treatment for her back and neck in the form of pain medication, physical therapy, and injections. . . .  However, any error is harmless because the ALJ

1    provided two other legitimate reasons, supported by substantial evidence, for discounting
2    Plaintiff's testimony.").
3    **V.    Conclusion.**
4           Having carefully reviewed the ALJ's decision and the record as a whole, the Court
5    finds that the decision is supported by substantial evidence and not based on harmful legal
6    error.  The decision therefore will be affirmed.
7           **IT IS ORDERED:**
8           1.      The final decision of the Commissioner of Social Security to deny Plaintiff's
9    claim for disability insurance benefits (Tr. 1320-43) is **affirmed**.
10          2.      The Clerk of Court shall enter judgment accordingly.
11          Dated this 11th day of September, 2024.

David G. Campbell
Senior United States District Judge